# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:24-cr-441 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| ADOLPH BROWN, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Before the Court is Defendant Adolph Brown's Motion to Amend Terms of Probation and Correct Time Credit pursuant to The First Step Act ("Motion") (ECF No. 8).  The Government has filed a timely response in opposition, (ECF No. 10), and Defendant a reply in support, (ECF No. 12).  For the following reasons, Defendant's Motion is **DENIED.**

## I.      BACKGROUND

On August 25, 2015, a federal grand jury indicted Defendant on a single count of possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii) (Count One).  (ECF No. 1-2).  After a bench trial, Defendant was found guilty on Count One and sentenced to a 210-month term of imprisonment with credit for time served and a five-year term of supervised release on March 7, 2019.  (ECF No. 1-5, PageID #30–31).  On February 24, 2021, Defendant's sentence was amended to time served with a five-year term of supervised release. (ECF No. 1-6, PageID #36–38).  As a special condition of his supervised release, Defendant could not use or possess alcohol.  (*Id.* at PageID #40).

While on supervised release, Defendant tested positive for cocaine in December 2023, and for cocaine and alcohol in January 2024, in violation of mandatory (prohibition on possession and

1

use of controlled substances) and special conditions (prohibition on use or possession of alcohol) of his supervised release.  Supp. Pet., ECF No. 285, *United States v. Brown*, No. 2:15-cr-182 (W.D. Penn. Jan. 16, 2024).  After admitting the violations, Defendant was sentenced to a one-year and one-day term of imprisonment and a three-year term of supervised release on February 1, 2024. (ECF No. 1-4, PageID #26–27).  Defendant's new term of supervised release again contained the special condition that he refrain from using or possessing alcohol.  (*Id.* at PageID #29).

On November 22, 2024, jurisdiction over Defendant's supervised release was transferred from the Western District of Pennsylvania to the Northern District of Ohio.  (ECF No. 1). Defendant's term of supervised release began on October 18, 2024 and runs until October 17, 2027.  (*Id.* at PageID #1).

On May 27, 2025, Defendant filed the instant Motion.  (ECF No. 8).  Defendant moves the Court to: (i) modify the terms of his supervised release to remove the special condition prohibiting the use and possession of alcohol; and (ii) apply First Step Act ("FSA") time credits he earned during his original sentence to reduce his term of supervised release.  (*Id.* at PageID #96).  On July 11, 2025, the Government filed a response in opposition to the Motion.  (ECF No. 10).  On July 14, 2025, the Court ordered Defendant to file a reply in support of the Motion by August 4, 2025. (Order [non-document] dated July 14, 2025).

On August 12, 2025, after the deadline passed, Defendant moved for an extension of time because he had not viewed the Government's response until that same day.  (ECF No. 11).  The Court granted an extension and ordered Defendant to file a reply by August 26, 2025.  (Order [non-document] dated Aug. 12, 2025).  On August 26, 2025, Defendant filed a reply in support of the Motion.  (ECF No. 12).

## II.  MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE

In support of his request that the Court should remove the special condition of supervised release prohibiting the use and possession of alcohol, Defendant states that alcohol has never been "his problem in life", and he has matured and grown in the past decade.  (ECF No. 8, PageID #96).  Defendant also appears to admit that he has been using alcohol during his current term of supervised release, stating: "The defendant worked a job, owned a restaurant, and paid taxes since his release in 2021.  The defendant has done these things while using alcohol without resorting back to a life of crime."  (*Id.*).  The Government responds that there was specific evidence of Defendant's prior alcohol and substance abuse in his Presentence Report, which supported the special condition to not use or possess alcohol when his original sentence was imposed.  (ECF No. 10, PageID #100, 103).  The Government notes that Defendant has violated this special condition multiple times and argues that the Court should not reward Defendant for failing to comply and seeking permission only after violating the condition.  (*Id.* at PageID #103).

Under 18 U.S.C. § 3583(e)(2), district court may modify the conditions of supervised release upon a defendant's request at any time prior to the termination of the term of supervised release, only after considering the factors set forth under 18 U.S.C. § 3553(a).  18 U.S.C. § 3583(e)(2).  While a district court must offer an explanation when it imposes or modifies the conditions of supervised release, it need not provide any explanation when it *denies* a request to modify the terms of supervised release.  *United States v. Croyle*, No. 23-3393, 2024 U.S. App. LEXIS 12190, at *4–7 (6th Cir. May 20, 2024) ("[N]o statute—and no circuit caselaw—requires a district court to explain why it *declines* to modify conditions of supervised released that were previously imposed." (emphasis in original) (citations omitted)).

3

Having considered the relevant § 3553(a) factors, the Court **DENIES** Defendant's request to remove the special condition prohibiting the use and possession of alcohol.  The record belies Defendant's statement that he has never had any issues with alcohol abuse, with evidence of prior alcohol abuse before his initial conviction and during the time of his original offense.  Defendant was also previously sentenced to a term of imprisonment for violating the mandatory condition prohibiting the use of controlled substance and a special condition prohibiting the use alcohol during his initial term of supervised release.  He now appears to admit to violating the same special condition prohibiting alcohol again during his current term of supervised release.  This behavior indicates an ongoing issue with alcohol and substance abuse in general, demonstrates both a disregard for his imposed punishment and disrespect towards the Court and its orders, and ultimately cautions against removing or altering the special condition prohibiting the use and possession of alcohol.  Indeed, Defendant's failure to stop using alcohol, even in the face of potential incarceration for doing so, indicates that there is a serious problem that necessitates continued supervision.

## III.   MOTION TO APPLY FSA CREDITS

Defendant requests that the Court apply the 400 days of FSA time credit which he earned during his original term of imprisonment from 2015 to 2021 to his current term of supervised release.  (ECF No. 8, PageID #96–97).  The Government responds that there is no authority for the Court to apply FSA time credit towards Defendant's term of supervised release.  (ECF 10, PageID #103–04).  It also argues that, even if FSA time credit could be applied towards a term of supervised release in general, the time credit here could not be used to reduce the current term of supervised release because it is part of new sentence imposed for a supervised release violation.  (*Id.* at PageID #104).  The Court agrees with the Government.

4

First, Defendant's FSA time credit earned during his original sentence of incarceration could not have been applied towards his post-revocation term of imprisonment; nor can it be applied to the current term of supervised release.  Defendant requests that the Court apply the FSA time credit he earned during his original sentence from 2015 to 2021 for possession with intent to distribute cocaine to reduce his current term of supervised release.  In February 2024, after Defendant had completed his original term of imprisonment and was serving his original three-year term of supervised release, he was sentenced to a one-year and one-day term of imprisonment for violating the terms of his supervised release, followed by a new three-year term of supervised release.  (ECF No. 1-4).  Defendant does not assert that he earned any time credit during his post-revocation sentence, nor does he request the application of any such credit to his current term of supervised release.

Although Defendant's initial term of supervised release is considered part of the sentence and punishment for his conviction, "the imprisonment that ensues from revocation is partly based on new conduct, is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast."  *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005); *see also United States v. Wirth*, 250 F.3d 165, 170 n.3 (2d Cir. 2001) ("It is well-settled . . . that punishment for a violation of supervised release is separate from punishment for the underlying conviction . . . .").  Federal district courts have uniformly held that revocation sentences are treated as separate and distinct from original sentences for purposes of calculating and applying FSA time credit.  *See, e.g., Smith v. Williams*, No. 4:19-cv-2819, 2020 U.S. Dist. LEXIS 110487, at *7–9 (N.D. Ohio June 8, 2020) (collecting cases); *Parks v. Quay*, No. 1:20-cv-437, 2020 U.S. Dist. LEXIS 86587, at *4–6 (M.D. Pa. May 18, 2020) (same); *Jamison v. Warden, Elkton Fed. Corr. Inst.*, No. 1:19-cv-789, 2019 U.S. Dist. LEXIS 190981, at *4–6 (S.D. Ohio Nov. 4, 2019) (same);

*see also Williams v. Fitch*, No. 2:21-cv-549, 2024 U.S. Dist. LEXIS 31187, at *15 (M.D. Ala. Jan. 31, 2024) ("Even if Petitioner could demonstrate entitlement to any additional or outstanding FSA credits, based on the controlling statutes and federal regulations, those credits could not be . . . used to shorten the period of any future imprisonment Petitioner may have to serve for violating a condition of release."), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 30339 (M.D. Ala. Feb. 22, 2024); *Kieffer v. Rios*, No. 19-cv-899, 2019 U.S. Dist. LEXIS 143422, at *2–3 (D. Minn. Aug. 23, 2019) (declining to aggregate a petitioner's original sentence and revocation sentence for purposes of calculating FSA time credit because the two sentences are treated as separate and distinct), *aff'd*, 2019 U.S. App. LEXIS 39171 (8th Cir. Oct. 2, 2019); *Garland v. Johnson*, No. 1:19-cv-53, 2019 U.S. Dist. LEXIS 177527, at *2–3 (W.D. La. Aug. 12, 2019) ("However, even if [petitioner] had been entitled to additional good time credit toward his sentence that he did not receive, federal law provides that those credits could not be used either to shorten the period of his supervised release or to shorten the period of any future imprisonment [petitioner] may be required to serve for violating the conditions of his release.") (citing 28 C.F.R. § 2.35(b) ("Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.")). The Court finds the reasoning of the above courts persuasive and agrees with their collective conclusion.

The instant term of supervised release is part of the sentence and punishment for Defendant's revocation sentence. For the reasons set forth in the above authority, the Court finds that: (i) Defendant's revocation sentence is separate from his original sentence for purposes of calculating FSA time credit; and (ii) the FSA time credit earned during Defendant's original

sentence cannot be applied to his post-revocation sentence, including the instant term of supervised

release.  Accordingly, Defendant's request to apply FSA time credit is **DENIED**.

Alternatively, the Court would also deny Defendant's request because FSA time credit

cannot be applied to reduce a term of supervised release.  The relevant portion of the FSA states:

> Time credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C).  Section 3624(g)(3) states:

> Supervised release.  If the sentencing court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

18 U.S.C. § 3624(g)(3).

The Court notes that the majority of courts addressing this issue, and interpreting the

statute's language, have concluded that FSA time credit can be applied only to pre-release custody

and provides no authority to reduce a term of supervised release.  *See United States v. Calabrese*,

No. 1:11-cr-0437, 2023 U.S. Dist. LEXIS 24259, at *5–6 (N.D. Ohio Feb. 13, 2023) (collecting

cases); *Nimesh Shah v. Peters*, No. 3:23-cv-801, 2025 U.S. Dist. LEXIS 94260, at *4 (S.D. Cal.

May 16, 2025) ("Almost every court to consider this issue has concluded that FSA credits cannot

be applied to reduce a term of supervised release."); *see also Gelagotis v. Boncher*, No. 22-cv-

11697, 2023 U.S. Dist. LEXIS 175170, *8–9 (D. Mass. Sept. 29, 2023) ("[I]t is not appropriate to

apply FSA credits to shorten the ongoing term of supervised release. The language of the [relevant]

FSA provisions cabins the application of FSA credits to the term of imprisonment, not the term of

supervised release."); *Harrison v. Fed. Bureau of Prisons*, No. 22-13312, 2022 U.S. Dist. LEXIS

211032, at *3 (S.D. Fla. Nov. 21, 2022) ("Based on the plain text of the statute, FSA credits cannot be used to shorten a term of supervised release.  Rather, the credits can only be used to allow early transfer to supervised release.").

In *Calabrese*, a district court in the Northern District of Ohio carefully analyzed this issue by first looking at the plain text of the statute.  As the court noted, section 3632(d)(4)(C) of the FSA "provides that time credits shall be applied *toward* supervised release" and reasoned that "[u]se of the word 'toward' means that credits can be applied to bring 'time in prerelease custody or supervised release' closer to occurring because credits applied 'toward' something generally means to bring that something closer to happening."  *Calabrese*, 2023 U.S. Dist. LEXIS 24259, at *6 (citing Black's Law Dictionary (11th ed. 2019)).  The *Calabrese* court found that Section 3632(d)(4)(C) "clearly provides that the time credits are to reduce the prisoner's prison term" instead of the term of supervised release, after noting that the statute "instructs the BOP to transfer eligible prisoners into prerelease custody or supervised release, citing Section 3624(g), which defines 'eligible prisoners' as one who 'has earned time credits under the [FSA] in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."  *Id.*

The *Calabrese* court then found more support for its conclusion that time credits do not apply towards a reduction to a term of supervised release under Sections 3624(g) and 3624(e) of the FSA.  Addressing Section 3624(g), the court stated:

> This provision does not suggest that the term of supervised release might be reduced (or eliminated) because of time credits.  Rather it contemplated that the prisoner will be released to begin any such term of supervised release that was include in a prisoner's sentence.  Plainly, the FSA allows a prisoner to either complete the service of their sentence in prerelease custody or complete their term of supervised release at an earlier date by transferring the prisoner to supervised release at an earlier date—the FSA does not allow a prisoner to reduce the imposed length of supervised release. *Harrison*, 2022 U.S. Dist. LEXIS 211032, 2022 WL 17093441, at *1 ("Based on the plain text of the statute, FSA credits cannot be used to shorten

a term of supervised release.  Rather, the credits can only be used to allow early transfer to supervised release.").

2023 U.S. Dist. LEXIS 24259, at *7.  Ultimately, the *Calabrese* court found that defining "toward" in Section 3632(d)(4)(C) to mean that FSA credits can be applied to reduce a term of supervised release "would lead to absurd results" and "would write out any mechanism in the statute for FSA credits to reduce an eligible prisoner's time in custody in prison, which is the intended incentive behind the FSA time credits." *Id.* at *8–9.

In *United States v. Doost*, the district court conducted a thorough analysis of the statutory scheme and structure of the FSA and found that "in the context of other sections of the FSA . . . Congress did not intend the term 'toward' [in Section 3642(d)(4)(C)] to allow courts to apply earned but unused time credit to reduce a court-imposed term of supervised release." *United States v. Doost*, No. 22-cr-466, 2024 U.S. Dist. LEXIS 83262, at *9–12 (N.D. Cal. May 7, 2024) (noting that, in part, "no section in the FSA states that a Court may consider earned time credits to reduce a term of supervised release").  The *Doost* court then analyzed the legislative history of the FSA, concluding that "[t]he legislative history of the FSA supports a narrow application of earned time credits to reduce a convicted felon's period of incarceration and to release them to pre-release custody or to supervised release, but not to reduce their supervised release term." *Id.* at 12–13.

The Court adopts the reasoning and analysis of the above cases and agrees with the vast majority of courts that have concluded there is no authority under the FSA to apply time credits to reduce a term of supervised release.[1]  This conclusion is supported by the statute's text, the

---

[1] The Court notes that some district courts have concluded that FSA time credits should be applied to reduce a term of supervised release. *See, e.g.*, *Dyer v. Fulgam*, No. 1:21-cv-299, 2022 U.S. Dist. LEXIS 91170, at *6–7 (E.D. Tenn. May 20, 2020); *see also United States v. Mincey*, No. 1:18-cr-194, 2022 U.S. Dist. LEXIS 181765, at *5–6 (D.N.D. Oct. 4, 2022) (finding *Dyer* persuasive); *Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 214 (D. Conn. 2024) (finding that FSA time credit can and must be applied to reduce a term of supervised release after noting that "numerous out-of-circuit cases have rejected *Dyer*").  That said, these courts represent a small minority, and the Court finds their conclusion and reasoning unpersuasive in light of the reasoning of the majority cases discussed above. *See Nimesh Shah*, 2025 U.S. Dist. LEXIS 94260, at *6 ("[C]ourts since *Dyer* that have thoroughly analyzed the language *Dyer*

statutory scheme of the FSA, and the FSA's legislative history.  Moreover, applying FSA time credits to reduce a term of supervised release would contravene the rehabilitative purposes of supervised release.  *See United States v. Johnson*, 529 U.S. 53, 59, 120 S. Ct. 1114, 146 L. Ed. 2d 39 (2000) ("The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release.").  Therefore, the Court would deny Defendant's request to apply FSA time credits to reduce his current term of supervised release on this alternative ground.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Amend Terms of Probation and Correct Time Credit pursuant to The First Step Act (ECF No. 8) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Date: August 27, 2025

_____
**CHARLES E. FLEMING
U.S. DISTRICT COURT JUDGE**

---

relies on along with the rest of this subsection and other provisions of the FSA have almost unanimously rejected *Dyer's* conclusion.  In other words, *Dyer* 'is an outlier that has been soundly rejected by an ever-growing number of courts since its issuance.'"); *United States v. Calhoun*, 2023 U.S. Dist. LEXIS 205283, at *5 (S.D. Miss. Nov. 16, 2023) ("*Dyer* has gained almost no traction and has been expressly rejected by nearly every court to consider it."); *Calabrese*, 2023 U.S. Dist. LEXIS 24259, at *5 ("Since *Dyer*, other courts to consider this issue have declined to follow *Dyer's* reasoning.")